

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 3:20-mj-00108 |
|  | ) |
|  | ) |
| BRIGGS KYOMASANG MEKUI | ) |
|  | ) |

*Defendant(s)*

## CRIMINAL COMPLAINT
### BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  May 1, 2020  in the county of  Wasco  in the District of  Oregon , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 113a(5), 113(a)(8) and 1152 | Assault and Strangulation |

This criminal complaint is based on these facts:

See attached affidavit of FBI, Special Agent Benjamin A. Jones

☑ Continued on the attached sheet.

*Complainant's signature*

Benjamin A. Jones, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  2:50 pm  a.m./p.m.

Date:  May 8, 2020

*Judge's signature*

City and state:  Portland, Oregon      Youlee Yim You, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:       AFFIDAVIT OF BENJAMIN A. JONES

## Affidavit in Support of a Criminal Complaint and Arrest Warrant

I, Benjamin A. Jones, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and have been so employed since February 2009. I am currently assigned to the Portland Division, Bend Resident Agency. While employed by the FBI, I have investigated federal criminal violations related to violent crime and crime on Indian Country. As a federal agent, I am authorized to seek and obtain arrest warrants, and to investigate violations of federal law. My responsibilities include the investigation of federal criminal offenses, to include Title 18, United States Code, § 113a(5) – Assault, and Title 18, United States Code, § 113a(8) - Strangulation.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for Briggs Kyomasang Mekui (hereinafter "Mekui"), having a date of birth of XX-XX-1989 for violating Title 18, United States Code, § 113a(5) – Assault, and Title 18, United States Code, § 113a(8) - Strangulation. As set forth below, there is probable cause to believe, and I do believe, that Mekui committed the above-described offenses.

### Applicable Law

3. Title 18 U.S.C. § 113(a)(5), provides that it is unlawful for a person to intentionally using a display of force that reasonably caused another person to fear immediate bodily harm, within a special maritime and territorial jurisdiction of the United States.

4. Title 18 U.S.C. § 113(a)(8), provides that it is unlawful for a person to assault a spouse or intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate, within a special maritime and territorial jurisdiction of the United States.

5. Title 18 U.S.C. § 1152, provides that except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, shall extend to the Indian Country, and that the general laws shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian Country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

### Statement of Probable Cause

6. The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the complaint, it does not set forth each and every fact that I or others have learned during the course of this investigation. Much of the below information was taken from a report written by Detective Josh Keyes of the Warm Springs Police Department (WSPD) who I have known for approximately three years. I know him to be an honest and professional law enforcement officer. Unless so indicated, statements are made in substance and not direct quotes.

7. As a summary, on May 1, 2020, at approximately 9:55 PM, WSPD responded to a domestic disturbance at the Kah-Nee-Ta Hamlets on the Warm Springs Indian Reservation (WSIR). Investigation revealed that Mekui had assaulted his fiancé, Adult Victim 1 (hereafter, AV1), in the house that they shared. During the assault, Mekui struck AV1 with a toy, kicked her, strangled her, grabbed her around the waist and threw her to the ground. He also held a knife while standing over her, and told her that he was going to kill her. Mekui and AV1 have been living together for about three years and have two children together. AV1 represented she is an enrolled member of the Eastern Band of Cherokee Indians, by virtue of Indian blood, and provided an identification card from the Bureau of Indian Affairs.

8. The facts in this case were provided to me in the form of three reports from WSPD. These reports are excerpted below. The reports have been edited for formatting and brevity.

9. From the report of Officer Brandon Durbin, who responded to the scene of a reported assault with Officer Caleb Saulo:

a. AV1 told me she was assaulted by Mekui, her fiancé of two years. Before I could speak with AV1, Warm Springs EMS arrived on the scene to evaluate AV1. Warm Springs EMS stated they were transporting her to St. Charles Hospital in Madras to be further evaluated. Before AV1 went to the ambulance to be transported, she told me her child (minor witness one, DOB xx-xx-2013, hereinafter "MW1") witnessed the altercation.

b. I sat down with MW1 and she/he told me the following in essence: Mekui and AV1 were arguing in their bedroom on the north/east side of the residence. AV1 was

trying to leave the house but Mekui would not let her. MW1 went on to tell me Mekui was trying to stab AV1 at one point and said, "It was crazy." MW1 was clearly upset so I discontinued the interview.

    c.    I went to the ambulance where AV1 was and got a full statement from her. AV1 told me the following in essence: AV1 and Mekui were in their room arguing. AV1 said something that made Mekui upset and he lunged at her, acting like he was going to hit her. AV1 stated her child (Minor Witness Two, DOB XX-XX-2019, hereinafter "MW2") was present for this and was now screaming. AV1 stated Mekui picked up a Learning Cube toy and struck AV1 in her back-left shoulder. AV1 attempted to make a phone call to her sister on her phone, but Mekui took away her phone.

    d.    MW1 was now present and attempted to make a phone call on a separate phone. Mekui took the phone from MW1. AV1 went to the front door in an attempt to go outside and scream for help. Mekui grabbed her by her torso, just below her chest, and pulled her back inside causing her to fall to the ground. Mekui began to drag AV1 back to their bedroom by her legs and arms. Mekui dragged AV1 near the kitchen where he went and retrieved a knife. AV1 stated Mekui, "came at me" with the knife. MW1 was now screaming for Mekui to stop. Mekui was standing over her with the knife and said, "I'm gonna kill you," "I'll show you I have nothing to lose," and "I'll show you what crazy is."

    e.    Sometime before or after (she said it was a blur and she was not sure) Mekui had the knife, he grabbed AV1 by her neck and began to choke her with one of his hands. AV1 stated it was a blur, but Mekui was pressing the left side of her face against the floor while he grabbed her neck and began to apply pressure. AV1 stated Mekui was

screaming in her face and she could not breathe. She does not know what made Mekui stop, but he did. AV1 again attempted to go outside and scream for help. Mekui grabbed AV1 again by the torso and was squeezing her. AV1 stated she kept pushing him off. Mekui stopped, gathered up all the children in the residence, MW1, MW2, and a third child, (Minor Witness Three, DOB XX-XX-2020, hereinafter "MW3") and put them in their room. When MW1 was in the room with Mekui, AV1 heard MW1 say, "Please don't kill me." Mekui came out of the room. He attempted to clean up AV1 with some water then left. MW1 called AV1's sister and the altercation was over until police arrived.

    f.    I asked AV1 if she thinks Mekui was trying to kill her, she thinks he was. I asked AV1 on a scale from zero to ten, zero being not scared and ten being the most scared she has ever been in her life, how scared she was during the altercation. AV1 stated she was a, "10,000" out of ten. I asked AV1 how much pain she was in during the altercation on a scale of zero to ten, zero being no pain and a ten being the most pain she has ever been in. AV1 stated she was a ten out of ten. AV1 stated during the altercation she was having a hard time breathing. AV1 was transported to St. Charles Hospital in Madras.

    g.    I responded to St. Charles Hospital in Madras to get further information from Mekui and AV1. I asked AV1 how much pressure Mekui was applying to her neck on a scale of zero to ten, zero being no pressure and ten being the most pressure she has ever felt. AV1 stated she felt it was an eight out of ten. I asked AV1 how big the knife was Mekui had. She held up her index fingers and held them approximately six inches apart. AV1 told me she forgot to mention Mekui kicked her in the chest and left side of

her face at the beginning of the altercation while Mekui was holding MW2. I observed no marks on AV1's neck, but she had some slight red marks on her left arm and chest area.

        h.      I went to Mekui and asked him how big the knife was, Mekui held up his two index fingers approximately six inches apart indicating how big the knife was. Mekui stated the knife was a steak knife. Mekui continued and stated he grabbed the knife, then saw MW1's eyes, then put the knife back in the kitchen.

10.      Report of Officer Caleb Saulo:

        a.      I went outside and near the residence I located Mekui who was walking towards me. I informed Mekui he was going to be detained for investigative purposes. I placed handcuffs onto his wrists.

        b.      I read Mekui his Miranda Warning verbatim from a prepared card and asked Mekui if he understood his rights. Mekui stated he did. I placed Mekui into the backseat of my patrol vehicle and asked Mekui what happened between him and AV1. Mekui stated the following information, in essence; Mekui and AV1 had a verbal altercation inside of a bedroom at their residence. As Mekui and AV1 were arguing while lying on top of a bed, Mekui became extremely agitated. Mekui stated while he was lying down and holding his child, he used his right leg and kicked AV1's left arm, to get her away from him, as AV1 was on the bed near Mekui. I asked Mekui what happened after he kicked AV1. Mekui stated he stood up, placed his child in between him and AV1, then Mekui placed his right hand on AV1's facial area, covering her chin and mouth, and left his hand there for a couple of seconds while applying moderate force/pressure. Mekui

stated he removed his hand and departed from the residence after he heard the cries and yells from the children inside of the residence.

11. On May 4, 2020, Detective Josh Keyes conducted interviews with AV1 and Mekui separately at the residence where the incident occurred:

a. AV1 stated she had a headache the day after the assault and the headache was currently not present. AV1 showed me the left side of her face and said it was still swollen. AV1 denied difficulty swallowing. I observed mild to moderate swelling on the left side of her jaw to her neck. AV1 pointed to her left shoulder and stated it was sore from a "Learning Cube" toy that Mekui threw at her. AV1 showed me an abrasion on the left side of her chest from Mekui kicking her. AV1 does not recall the exact time of the event. She states it was dark outside and her family recently left for Safeway and it was sometime before Safeway closed at 10:00 PM.

b. AV1 was asked if Mekui has ever assaulted her in the past. AV1 stated she was assaulted two other times. AV1 provided the following statements about prior assaults. AV1 recalls being pregnant with MW2 when Mekui pushed her, slapped her and punched her in the face. She does not recall dates and did not report the incident.

c. AV1 stated in February this year following the birth of her son MW3, Mekui placed both hands on her neck and applied pressure. AV1 recalled she started to "black out" from the pressure just before Mekui stopped. AV1 did not know what made him stop strangling her. AV1 did not report this incident to anyone.

d.   Mekui was interviewed at the same location. Detective Capehart was present during the interview. Mekui was cooperative and was not under the influence of any substances. At about 12:24 p.m. Mekui was read his Miranda Rights from a prepared form. Mekui said he understood his rights and signed the form. Mekui provided the following in essence: Mekui and AV1 were in their bedroom having a conversation. The conversation started escalating and words were exchanged. Mekui had the baby, MW2, in his hands and kicked AV1 in the arm. I asked Mekui to demonstrate how he kicked AV1. Mekui stood up and did a high roundhouse kick. Mekui stated things escalated and he "did not mean to choke her." (Mekui was not asked about choking AV1). Mekui demonstrated with his hands by placing one hand on his neck and applying pressure. Mekui said his pressure on her neck was a 4 on a scale of 1-10.

e.   Mekui denied pinning AV1 to the headboard. Mekui stated that while they were in the kitchen he did not pin her head to floor, he was trying to pick her up. Mekui stated she fell to the floor when he was trying to push her away. Mekui stated AV1 was yelling and said something that made him mad. Mekui said he "grabbed a knife from the kitchen for some reason." Mekui described the knife as a black handled steak knife. Mekui stood up and demonstrated holding the knife in his right hand with his arm down at his side with the blade pointing down. Mekui said MW1 was watching him with the knife and saw MW1's eyes were very big and that is why he put down the knife.

f.   Mekui was asked if he ever threatened AV1 verbally. Mekui said no. I asked Mekui if he ever said he was going to kill AV1. Mekui stated "yes." Mekui stated he has been very stressed lately and thought this may have led to the events that occurred

on mentioned night. Mekui stated the stress had been from his youngest being born premature and staying in Portland for two months while he was in the hospital. I asked Mekui if he ever prevented AV1 from leaving the house during the altercation. Mekui said yes and demonstrated a bear hug to prevent AV1 from leaving. Mekui was asked if AV1 said anything to him during the assault. Mekui stated AV1 said "stop please, the kids".

## Conclusion

12.     Based on the above facts, I have probable cause to believe and do believe that Briggs Kyomasang Mekui violated Title 18, United States Code, § 113a(5) – Assault, and Title 18, United States Code, § 113a(8) - Strangulation. I therefore request that the Court issue a criminal complaint and arrest warrant for Briggs Kyomasang Mekui.

13.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Pamela Paaso, and AUSA Paaso advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant for Briggs Kyomasang Mekui.

## Request for Sealing

14.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information contained herein is relevant to an ongoing investigation, and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause

intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

                                                                                 Benjamin A. Jones
                                                                                 FBI Special Agent

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __2:50_ p.m. a.m/p.m. on __May 8, 2020____.

                                                                                 *Youlee Yim You*
                                                                                 Youlee Yim You
                                                                                 United States Magistrate Judge